IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PAUL SCHNEIDER,<br>  Plaintiff, | :<br>: | CIVIL ACTION |
| v. | :<br>: | NO. 21-4150 |
| COMMISSIONER OF SOCIAL SECURITY,<br>  Defendant. | :<br>:<br>: | |

### MEMORANDUM OPINION

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                         August 11, 2022

This action was brought pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), which denied the application of Paul Francis Schneider Jr. ("Schneider") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 301, *et seq.* (the "Act"). Presently before the Court is Plaintiff's Brief and Statement of Issues in Support of Request for Review ("Pl. Br.") (Doc. 10); Defendant's Response to Plaintiff's Request for Review ("Def. Br.") (Doc. 11); and the record of the proceedings before the Administrative Law Judge ("ALJ") (Doc. 4) (hereinafter "R."). Plaintiff asks the Court to reverse the decision of the ALJ and to remand the matter to the Commissioner for an award of benefits or, in the alternative, remand for further administrative proceedings. The Commissioner seeks the entry of an order affirming the decision of the ALJ. For the reasons set forth below, we grant the request for review and remand for further consideration of the "borderline age" issue described within.

I.     FACTUAL AND PROCEDURAL HISTORY

Schneider has a high school education, with employment history as a warehouse worker, delivery driver, tractor-trailer driver, and salesperson. He suffered a stroke on September 7, 2016, at the age of 54. In the year following his stroke, he underwent occupational, physical, and visual therapy and saw improvements. (R. 37.) Even after he no longer used a walker, however, he continued to have balance issues. He also felt his vision and ability to read had not returned to normal even after two years and that he had issues with memory and word finding. (R. 34.) He lived with his mother, who was a retired nurse. (R. 36.)

As someone who was "insured" for DIB by virtue of the earnings taxes he had paid over the years, Schneider filed a claim for DIB on October 4, 2016. He alleged that his onset of disability dated to September 8, 2016, the day after he suffered the stroke. His insured status for DIB was set to expire, however, on December 31, 2016, just a few months later. He was a little over five months shy of turning age 55 as of his "date last insured."[1]

The state agency denied Schneider's claim on March 24, 2017, and he requested a hearing with an ALJ. A hearing by video took place on August 23, 2018, at which Schneider appeared with counsel. An impartial vocational expert ("VE") testified regarding the vocational implications of various functional capacity formulations propounded by the ALJ in hypothetical questions.

On December 18, 2018, the ALJ issued her unfavorable decision. She found that Schneider had not been disabled at any time from the date of his alleged disability onset through the date last

---

[1] DIB claimants bear the burden of proving disability prior to the expiration of their insured status. A claimant who becomes disabled after his date last insured is not entitled to DIB. *See* 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). *See also Matullo v. Bowen*, 926 F.2d 240 (3d Cir. 1990).

insured – the four-month period at the end of 2016 – based on her finding that Schneider could perform a restricted range of work at the light exertional level. Her analysis of Schneider's ability to perform jobs other than those he held in the past was informed by her application of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 – known as "the Grids" – specifically Grid Rule 202.14, which applies to claimants characterized as "closely approaching advanced age." Schneider requested review by the Appeals Council, but on January 3, 2020, that body concluded that there was no reason to set aside the ALJ's determination, rendering it the final decision of the Commissioner. This litigation followed.

## II. STANDARD OF REVIEW

This Court must determine whether the ALJ's conclusion that Schneider could perform jobs that exist in sufficient numbers in the national economy is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Rutherford v. Barnhart*, 399 F. 3d 546, 552 (3d Cir. 2005). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). *See also Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of evidence." *Rutherford*, 399 F.3d at 552. The factual findings of the Commissioner must be accepted as conclusive, provided they are supported by substantial evidence. *Richardson*, 402 U.S. at 390 (citing 42 U.S.C § 405(g); *Rutherford*, 39 F.3d at 552). The review of legal questions presented by the Commissioner's decision, however, is plenary. *Shaudeck v. Commissioner of Social Security Admin.*, 181 F.3d 429, 431 (3d Cir. 1999).

## III. DECISION UNDER REVIEW

The issue before the ALJ at the time of the December 18, 2018 decision under review was whether Schneider had been disabled within the meaning of the Act at any time between September

8, 2016 and December 31, 2016. The ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a) to reach her conclusion, and her decision ultimately followed from that final step.

At Step One, she found that Schneider had not engaged in substantial gainful activity since the alleged onset date. (R. 31, Finding No. 2.) At Step Two, she found that Schneider suffered from severe, medically-determinable impairments, specifically "late effects of injuries to the nervous system," visual disturbances, and obesity. (R. 31, Finding No. 3.) At Step Three, she concluded that Schneider did not have an impairment or combination of impairments that satisfied the criteria of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (R. 32, Finding No. 4.) These findings are not in dispute.

The ALJ then considered Schneider's residual functional capacity ("RFC"), which is defined as "the most [a claimant] can do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). She set forth a highly-detailed RFC finding, placing his capacity at the light exertional level but with a host of further specifications.[2] Applying that RFC at Step Four, the ALJ agreed that Schneider was unable to perform his past relevant work as a warehouse worker, delivery driver, tractor-trailer driver, and salesperson, as the work ranged from light to medium in exertion and was semi-skilled. (R. 39, Finding No. 6.)

The ALJ then proceeded to Step Five, at which she was to assess whether Schneider was capable of performing any other jobs that exist in significant numbers in the national economy

---

[2] A reproduction of the RFC finding would occupy nearly a full page of this Memorandum. The ALJ's finding, however, acknowledged limitations to some degree in certain postural activities, environmental conditions, interactions with the public, the pace of a production line or quotas, operation of a motor vehicle, and the reading of print the size found in newspapers and books. (R. 33, Finding No. 5.) The ALJ also noted that Schneider might be off-task 10% of the workday in addition to regular breaks and that he may need to be able to write some things related to instructions for performance. (*Id.*)

considering his age, education, work experience, and his RFC. This analysis takes into consideration age as a factor relevant to the claimant' ability to adjust to jobs not in his or her personal work history. At the hearing, the VE agreed that there were jobs at the light exertional level – such as Router, Classifier, and Cafeteria Attendant – that did not require someone to engage in any of the activities prohibited by the RFC that was posited by the ALJ and in conformity with the many other restrictions that the ALJ found were attributed to Schneider's visual, physical, and cognitive impairments post-stroke. (R. 40.) Citing to this testimony, the ALJ concluded that Schneider was capable of performing jobs that existed in significant numbers in the national economy and thus was not disabled. (R. 40 & Finding No. 10.)

## IV.   DISCUSSION

Schneider asserts that the ALJ's Step Five conclusion cannot stand because she failed to adhere to the process applicable to cases, such as his, presenting a borderline age situation. He contends that, as a result of this omission, the ALJ considered the Step Five question based upon the faulty premise that Grid Rule 202.14 provided the framework for decisionmaking when instead Rule 202.06 might have applied and directed a finding that he was "disabled." He contends that the ALJ was required to consider whether Rule 202.06 applied to him, given that he was nearly the requisite chronological age to meet the criteria for being a person "of advanced age" as opposed to someone merely "closely approaching advanced age." The Commissioner asserts that a "borderline age" situation was not present in Schneider's case and therefore there was no deficiency in the ALJ's analysis. As we set forth below, we agree with Plaintiff that he was entitled to this consideration and, having not received it, he has identified a sufficient basis for remand. [3]

---

[3] We note that Schneider's counsel made this argument to the ALJ at the outset of the hearing. He advocated for a finding that Schneider's RFC was sedentary, such that he would "grid out" as disabled under Rule 201.14. Alternatively, he argued, if the ALJ found Schneider capable of light

5

1.     **The Step Five analysis vis-à-vis age**

At Step Five of the sequential review, the Commissioner bears the burden to show that, considering the claimant's age, work experience, and RFC, the claimant can perform other jobs existing in significant numbers in the national economy. Reference to the Grids can aid this inquiry. Once the ALJ determines which categorization of four vocational factors – physical ability, age, education, and work experience – best describes the claimant, the Grid rules can yield a finding of "disabled" or "not disabled."

To apply the age factor, the ALJ must place the claimant in one of three categories: "younger person" (under age fifty); "person closely approaching advanced age" (ages fifty to fifty-four); or "person of advanced age" (fifty-five and older). 20 C.F.R. § 404.1563(c)-(e). These Grid rules are designed to take into account that age may "seriously" affect the ability to adjust to other work for a person "closely approaching advanced age," and that it may "significantly" affect that ability for a person who is of "advanced age." 20 C.F.R § 404.1563(d)-(e).

2.     **The law on borderline age situations**

As inviting as the bright lines of chronological age might be for ease of application, the Regulations in fact require a more fluid and nuanced analysis. They specify that the adjudicator will *not* apply the age categories "mechanically" in what is termed "a borderline situation." 20 C.F.R. § 404.1563(b). Rather, the applicable regulation continues:

> If [a claimant is] *within a few days to a few months* of reaching an older age category, and using the older age category would result in a determination or decision that [the claimant is] disabled, we will

---

work, then Rule 202.06 "could come into play" and similarly direct that he be found disabled. (R. 81-82.) In suggesting that the ALJ utilize Rule 202.06, which applied to those age 55 and over, counsel noted that Schneider "was just five months, about, a little more than five months shy of his 55th birthday" on his date last insured. (*Id.*)

> consider whether to use the older age category after evaluating the overall impact of all the factors of [the claimant's] case.

*Id.* (emphasis added).

Courts have interpreted this to mean that the ALJ must consider which of the Grid rules better describes the claimant on the operative date, given the claimant's actual age and "circumstances" on that date. *See, e.g., Kane v. Heckler*, 776 F.2d 1130, 1134 (3d Cir. 1985). That is, in "borderline" situations, the ALJ must determine whether the claimant's ability to adjust on the operative date was more like that of an "individual closely approaching advanced age" (50 to 54 years old) or of an "individual of advanced age" (55 or over). *See Lucas v. Barnhart*, 184 F. App'x 204, 207-08 (3d Cir. 2006). *See also Daniels v. Apfel*, 154 F.3d 1129, 1136 (10th Cir. 1998) (noting that the Commissioner must make this determination of which category "on either side of the borderline" best describes the claimant, using "whatever evidence is available" and that the determination must be supported by substantial evidence).

In 2016 and 2017, however, the Commissioner issued new guidance for its adjudicators, and specifically ALJs, on the borderline age analysis. First, effective on March 25, 2016, the Commissioner added a provision to its manual pertaining to Hearings, Appeals, Litigation and Law ("HALLEX"). It reiterated the guidance from 20 C.F.R. § 404.1563(b) about how to determine of a borderline age situation exists. *See* HALLEX I-2-2-42(B). It also provided, however, that regardless of whether the ALJ ultimately chooses to apply the higher age category, "[t]he ALJ *will explain in the decision* that the ALJ considered the borderline age situation, state whether the ALJ applied the higher age category or the chronological age, and note the specific factor(s) the ALJ considered." *See* HALLEX I-2-2-42(C) (emphasis added). In addition, the Commissioner modified another internal guide, the Program Operations Manual System ("POMS"), with respect to this question. Both the POMS and the HALLEX provisions clarify that

7

the operative date at which to consider applying a borderline age analysis can include the "date the Title II insured status expired (date last insured)[.]" POMS § DI 25015.006C; HALLEX § I-2-2-42-B.1. The POMS also directs adjudicators to "[c]onsider borderline age in all situations where age is a factor in the determination of disability," such as "prior to expediting step 5 of the vocational assessment[,]" that is, when utilizing the Grids. POMS § DI 25015.006C. Like the HALLEX provision, the POMS section also instructs adjudicators to "[d]ocument how [they] considered borderline age whether [they] allow or deny the claim." *Id.*, 25015.006E, G.

A particularly significant revision, however, addressed the language in the Regulations that envisioned a potential borderline age situation as one where the claimant was "within a few days to a few months" of the next age category. Courts had wrestled with the outer limits of this approach, struggling to determine how "few" (or, more correctly, "many") months away a claimant could be from the next age category that would trigger the requirement that the adjudicator "consider whether to use the older age category" as set forth in 20 C.F.R. § 404.1563(b).[4] Effective July 6, 2017 – which was prior to the ALJ's decision in Schneider's case – the POMS now states:

> We do not have a more precise programmatic definition for the phrase "within a few days to a few months." We define the term "a few" using its ordinary meaning, a small number. Consider a few days to a few months to mean *a period not to exceed six months.*

POMS § DI 25015.006B (emphasis added).

---

[4] In *Roberts v. Barnhart*, 139 F. App'x 418, 420 (3d Cir. 2005), the Third Circuit, in a non-precedential opinion, declined to require borderline age consideration be given to a claimant who was between five and six months of the desired age category. The court noted that there was an absence of authority to define borderline age as more than five months from the next desired age category. *Id.* at 420. Following *Roberts*, many district courts in the circuit were disinclined to remand for a borderline age consideration where the claimant was more than five months from reaching the next age category and where there was other evidence suggesting that the claimant's age was not a factor that significantly limited his or her vocational adaptability. *See, e.g., Holland v. Comm'r of Soc. Sec.*, Civ. A. No. 10-1019, 2012 WL 11052 at *1 (W.D. Pa. Jan. 3, 2012) (citing *Roberts* to find no borderline age situation where the claimant was five months from reaching an older age category but refusing to create a *per se* rule).

Since this internal guidance to adjudicators became effective, courts nationally have been more willing to accept *six months* as the outer limit on proximity to the next age category, and to require consideration when a claimant age is within that range. *See, e.g., Jolliemore v. Berryhill*, Civ. A. No. 17-12533-LTS, 2018 WL 5555068 at *3 (D. Mass. Oct. 29, 2018) (noting that in First Circuit, "there is general agreement that 'the borderline range falls somewhere around six months from the older age category'") (citation omitted); *Jody L. B. v. Comm'r of Soc. Sec.*, Civ. A. No. 21-734, 2022 WL 1541461 at *10 (N.D.N.Y. May 16, 2022) (collecting cases in which most courts in the Second Circuit, since publication of the POMS provision, held that a period of up to six months was borderline, but noting that some have found that a fewer number of months constituted the outer bounds); *Gregory v. Kijakazi*, Civ. A. No. 20-149-D, 2021 WL 3415183 at *4 (E.D.N.C. July 12, 2021) (identifying cases even prior to POMS 25015.006 language "confirm[ing] that, generally, claimants who are within six months of the next age category are routinely considered borderline"); *Wohler v. Saul*, Civ. A. No. 19-56, 2020 WL 1531296 at *13 (N.D. Ohio Mar. 31, 2020) ("While there is no precise time period for what constitutes a borderline age period, the Manuals and courts in [the Sixth] Circuit have generally found that a borderline age is a period within 6 months of the next age category at the specified time, including … the date last insured."); *Patlakh v. Kijakazi,* Civ. No. 20-4501, 2021 WL 5762497 at *7 (E.D. Pa. Nov. 17, 2021), *report and recommendation adopted,* 2021 WL 578999 (E.D. Pa. Dec. 3, 2021) (finding remand required where ALJ failed to apply borderline age analysis for claimant who was between five and six months from reaching age 55).

### 3.     Plaintiff was in the borderline age range.

On his date last insured, which was still early in his rehabilitation period from his stroke, Plaintiff was 5 months and 8 days shy of reaching age 55, an age that marks the beginning of a different age category applicable in the Step Five analysis: "advanced age." Plaintiff contends that

the ALJ was required to consider if he were more appropriately placed in that higher age category inasmuch as his chronological age was in a "borderline age" range and given that placement in the higher age category would have made a difference: he would have been found disabled at Step Five by operation of Rule 202.06 of the Grids.  The HALLEX and POMS provisions described above were in effect at the time of Schneider's hearing on August 23, 2018 and the decision issued on December 18, 2018.   Inasmuch as Schneider was within six months of turning age 55 when his insured status expired, these provisions applied to his case.  The ALJ was thus required to consider whether, as of December 31, 2016, Schneider was more appropriately considered a person "of advanced age" than a person who, based on his chronological age, was only "closely approaching advanced age."

A close reading of the ALJ's decision reveals no hint that the ALJ considered this question of borderline age, that is, which of the two age categories "on either side of the borderline" best described Schneider, using "whatever evidence is available" that bears on his ability to adjust to other work.  *See Lucas v. Barnhart*, 184 F. App'x 204, 207-08 (3d Cir. 2006).  *See also* 20 C.F.R § 404.1563(d)-(e) (describing the meaning of the different age categories).  This is despite the fact that counsel at the hearing argued that a borderline analysis was appropriate and that Schneider should get the benefit of consideration as a 55-year-old, with Grid Rule 202.06 being applied in his favor.  (R. 82.)

### 4. The ALJ's failure to consider the borderline age situation requires remand.

Our Court of Appeals recognizes that an ALJ commits a reversible error of law when he or she fails to analyze whether the claimant was borderline with respect to his age when applying the Grids at Step Five.  *See Lucas v. Barnhart*, 184 F. App'x 204, 206-08 (3d Cir. 2006) (reversing ALJ's decision where record lacked factfinding regarding the 20 C.F.R. § 404.1563(b) question

and where Grid Rule 202.06 was potentially implicated due to borderline age). Where a borderline age analysis could potentially change the disability determination, and the ALJ does not address or exercise her discretion to apply the age categories in a non-mechanical fashion, there is no question that remand is the appropriate remedy. *See Kane v. Heckler*, 776 F.2d 1130, 1132-33 (3d Cir. 1985); *Morealli v. Astrue*, Civ. A. No. 08-356, 2010 WL 654396 (W.D. Pa. Feb. 23, 2010) ("If a borderline analysis could potentially change the ALJ's determination of disability, remand is appropriate") (citing *Kane*).

Inasmuch as the record does not contain factual findings relevant to the § 404.1563(b) inquiry into whether Schneider was entitled to consideration under Rule 202.06 on his date last insured of December 31, 2016 as a borderline age case, we conclude that the Commissioner's decision that he is ineligible for benefits under that rule prior to his 55th birthday lacks the support of substantial evidence. The ALJ's failure to undertake a borderline age consideration constitutes reversible error.

## V.  CONCLUSION

The ALJ's Step Five analysis accounted for many functional limitations due to the effects of Schneider's stroke. Yet she failed to consider a critical component of the Step Five calculus: the proper characterization of his ability to adjust to other work, as commonly reflected in one's age. The ALJ's failure to recognize Schneider's proximity to the next age category, which could have had a dispositive impact upon the analysis, necessitates a remand.[5]

An appropriate order will follow.

---

[5] We agree with the Commissioner that the proper remedy for an error of this nature is not an award of benefits, as we are not to re-evaluate the evidence to make a factual determination that Schneider met the Act's definition of disability. *See* Def. Br. at 11 n.6. Rather, an ALJ must consider in the first instance whether the record would support use of the higher age category. *See* 20 C.F.R. § 404.1563(d); POMS § DI 25015.006(E).